IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ALTICOR INC., and | ) | |
| | ) | |
| AMWAY CORP., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| YIELD NATION, LLC, | ) | |
| | ) | |
| Defendant. | ) | **Jury Trial Demanded** |

## Complaint

1.      Plaintiffs Alticor Inc. and Amway Corp., for their Complaint against Defendant

Yield Nation, LLC, state as follows.

### Introduction

2.      Plaintiffs own or license the Nutriplant® brand of agricultural products.

Defendant Yield Nation sells its own fertilizer and seed treatment products that it passes off as

Nutriplant® products.  In many instances, Yield Nation has passed off its products as

Nutriplant® products to Plaintiffs' longtime Nutriplant® customers.  Based on this conduct, as

detailed below, Plaintiffs bring this Complaint for violations of the Lanham Act, 15 U.S.C. §§

1125(a)(1)(A), 1114(1), and Missouri common law, and respectfully request that the Court enter

judgment in their favor, enjoining Defendants and awarding Plaintiffs their damages, costs, and

fees.

1

**The Parties**

3.      Plaintiff Alticor Inc. ("Alticor") is a corporation, organized under the laws of the State of Michigan, with its principal place of business located in Ada, Michigan.  Alticor is the parent company of Amway Corp. and the owner of the Amway family of trademarks and all associated intellectual property rights.

4.      Amway Corp. ("Amway") is a corporation, organized under the laws of the State of Virginia, with its principal place of business located in Ada, Michigan.

5.      Defendant Yield Nation, LLC ("Yield Nation") is organized under the laws of the State of Missouri and has its headquarters in St. Charles County, Missouri.

**Jurisdiction and Venue**

6.      This action arises out of Yield Nation's passing off of its agricultural products as Nutriplant® products, including in this Judicial District.

7.      This action arises under the laws of the United States of America, Title 15 of the United States Code.

8.      This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121(a), and under the Judicial Code of the United States, Title 28 United States Code, particularly 28 U.S.C. §§ 1331, 1332 and 1367.   Plaintiffs' claim arising under the laws of the State of Missouri is substantially related to their federal claims such that they form part of the same case or controversy under Article III of the United States Constitution.

9.      This Court has personal jurisdiction over the parties, and venue is proper in this District under 28 U.S.C. § 1391(b).

## Facts

**A.    Plaintiffs' Nutriplant® Products**

10.    Plaintiffs Alticor and Amway (collectively "Plaintiffs" or "Amway") are worldwide leaders in developing, manufacturing, and providing nutrition, beauty, bath and body, cookware, household, agricultural, and other products to consumers under various brands, including Amway® and Nutriplant®.

11.    Plaintiffs permit Amway products (including Nutriplant® products) to be sold to U.S. consumers only through Amway.com and through Amway Independent Business Owners ("IBOs"), which enter into contracts with Amway to be able to sell Amway products.

12.    Plaintiffs spend a significant amount of time, energy, and resources toward protecting the value of their brands, products, name, and reputation.  By distributing products exclusively through their own website and through IBOs, Plaintiffs ensure the safety, well-being, and satisfaction of consumers and maintain the integrity and reputation of the Amway family of brands.  IBOs provide users of Amway products with explanation and guidance about the safe and proper use of Amway products.  In the highly competitive agricultural product market, quality and customer service are a fundamental part of the consumer's decision to purchase a product.

13.    Nutriplant® brand agricultural products include Nutriplant® AG foliar treatment and Nutriplant® SD seed treatment.  Nutriplant® AG is a liquid foliar nutritional supplement—essentially a spray fertilizer.  It is mixed with water and sprayed on crop leaves.  Nutriplant® SD is a powdered nutritional seed treatment that is applied to seeds as they are planted.

14.    The Nutriplant® products are popular with commercial farmers.  That popularity is driven by several characteristics.  For one, Nutriplant® AG and Nutriplant® SD enjoy a

reputation for quality based on increases in crop yields.  Nutriplant® AG and Nutriplant® SD also have the benefit of being simple to mix with other agricultural products and simple to apply to crops.

15.     As with other Amway products, Nutriplant® AG, Nutriplant® SD, and other Nutriplant® brand products are sold exclusively through Amway and its IBOs.

**B.     The Nutriplant® Trademark**

16.     To promote and protect the Amway family of brands, Alticor has registered numerous trademarks with the United States Patent and Trademark Office.  These trademarks include, but are not limited to, the Nutriplant® mark (U.S. Trademark Registration No. 2421752).

17.     The registration of the Nutriplant® mark is valid, subsisting, and in full force and effect.

18.     In addition to being a registered trademark, the Nutriplant name is a coined term that is inherently distinctive, and that serves to identify the particular source of the Nutriplant products.

19.     Plaintiffs actively use and market the Nutriplant® mark in commerce.

20.     Due to the quality and exclusive distribution of Nutriplant® products, and because Plaintiffs are recognized as the sources of high-quality products, the Nutriplant® mark has substantial value.

21.     Alticor has licensed its trademarks, including the Nutriplant® mark, to various subsidiaries, including Amway.

22.     A copy of the Certificate of Registration for the Nutriplant mark, Reg. No. 2421752, is attached as Exhibit 1.

4

23.     Yield Nation had, at a minimum, constructive notice, at all relevant times, of Plaintiffs' ownership and other rights in the registration of the Nutriplant mark.

### C.     Yield Nation

24.     Yield Nation manufactures, sells, and delivers agricultural products to consumers in states including but not limited to Missouri, Illinois, and Iowa.

25.     Yield Nation's customers consist primarily of independent farms and farm owners.

26.     Yield Nation was organized in Missouri in January 2020 for the "manufacture[] and sale[] of agricultural products."  Its sole organizer is Benjamin Buckwalter.  Upon information and belief, Buckwalter is the manager of Yield Nation.  In addition to these roles with Yield Nation, Yield Nation also represents to consumers that Buckwalter is a Yield Nation sales representative.

27.     Separate from his involvement with Yield Nation, Buckwalter formerly served as an Amway IBO.  In his former capacity as an IBO, Buckwalter sold Nutriplant® products through Amway.  During this time, he became familiar with Amway's Nutriplant® products and had access to Amway's Nutriplant® sales materials.

28.     As an IBO, Buckwalter interacted directly with Nutriplant® customers.  He also witnessed first-hand the strong consumer demand and high marketability of Nutriplant® products, including Nutriplant® AG and Nutriplant® SD.  Buckwalter resigned as an IBO in early 2020.

### D.     Yield Nation's False and Misleading Representations that it Sells Nutriplant

29.     Around the same time that Buckwalter resigned from Amway, Yield Nation started selling Yield Nation agricultural products.

30.     Yield Nation sells, manufactures, and delivers agricultural products in states including but not limited to Missouri, Illinois, and Iowa.

31.     Yield Nation sells its agricultural products under the false pretense that that they are Nutriplant® products.  Since at least its formation in January 2020 and continuing through the present, Yield Nation, through Buckwalter, has held itself out to consumers as a distributor of Nutriplant® brand products, including specifically Nutriplant® AG and Nutriplant® SD.

32.     This is false. Yield Nation is not licensed to sell Nutriplant® brand products and does not, in fact, sell Nutriplant® brand products. Yield Nation has no relationship with Nutriplant®, Amway, or Alticor.

33.     Yield Nation misleads consumers about the products it sells in a number of ways. In all events, Yield Nation sells its products under the false pretense that it is selling Nutriplant®.

34.     Among other tactics, Yield Nation targets consumers whom Yield Nation knows have purchased and used Nutriplant® AG and Nutriplant® SD in previous years.  In fact, Yield Nation has targeted numerous consumers who previously had purchased actual Nutriplant® AG and Nutriplant® SD through Buckwalter when he was an Amway IBO.

35.     Yield Nation, through its representatives, including Buckwalter, represents to these consumers that it continues to sell Nutriplant®.  Yield Nation conceals from consumers that Buckwalter no longer is an Amway IBO permitted to sell Nutriplant®; that Yield Nation is not licensed to sell Nutriplant® products; and that Yield Nation has no Nutriplant® inventory and cannot supply Nutriplant®, among other facts.

36.     Yield Nation exploits the customers' prior experiences purchasing Nutriplant® from Buckwalter.  For example, starting in late 2019, in advance of the 2020 growing season, Yield Nation, through Buckwalter, approached existing Nutriplant® customers to whom

Buckwalter had previously sold and asked if they were happy with "the product," in reference to the Nutriplant® he had sold them the previous year, and asked if they wanted to place orders for "the product" or to "purchase more" for the upcoming season.

37.     In all cases, Yield Nation affirmatively represents to consumers through statements made by telephone, text message, and in person that it distributes Nutriplant® and that the agricultural products the consumers are purchasing are Nutriplant®.

**E.     Yield Nation's False and Misleading Sales Materials and Unauthorized Use of the Nutriplant Name and Mark.**

38.     In addition to the false and misleading statements Yield Nation makes in person, by telephone, and through text messages or other electronic communications, Yield Nation provides consumers with sales materials that depict Nutriplant® products and the Nutriplant® mark to further its scheme.

39.     For example, when making sales, Yield Nation provides consumers with a document it refers to as a "Sales Receipt" that purports to depict the products Yield Nation offers for sale.  Those "Sales Receipts" generally include a written description of the product purchased—often specifically stating the product is Nutriplant.  An example is copied below.



40.     Those "Sales Receipts" also typically include images of Nutriplant® AG,

Nutriplant® SD, and Nutriplant® APSA-80, a weed control spray.



41.     Yield Nation provides customers with the Sales Receipt prior to payment.

42.     The Sales Receipt lists the category, quantity, and price of each Nutriplant®
product that Yield Nation purports to be selling the consumer.



43.     Nutriplant® products are the only products depicted on the Yield Nation Sales
Receipts.

44.    The Sales Receipts confirm to the buyers that they are purchasing Nutriplant® products.

45.    In furtherance of its sales efforts, Yield Nation also provides consumers with other sales and promotional materials that likewise represent that Yield Nation is selling Nutriplant®.

46.    These include a Yield Nation brochure that profiles Nutriplant® AG and Nutriplant® SD.

  

The brochure provides detailed information about Nutriplant® AG and Nutriplant® SD, including information relating to application, costs, and performance. The brochure describes Nutriplant® AG and Nutriplant® SD as "our products" and as "Yield Nation's crop solutions."

47.    Yield Nation also provided customers additional materials that further reinforced the pretense that Yield Nation was selling Nutriplant®, including irrigated soybean and corn trial results for Nutriplant® products.

48.    Consumers rely on these representations and depictions when agreeing to purchase, through Yield Nation, products that they believe are Nutriplant®.

**F.    Consumers Pay Yield Nation for What they Are Told is Nutriplant®**

49.    In reliance on Yield Nation's representations and omissions, as well as its sales

materials, customers place orders with Yield Nation for specific Nutriplant® products.

50.    After receiving the Sales Receipts, the customers pay Yield Nation the amounts set forth on their respective Sales Receipts.  The Sales Receipts instruct buyers to make payment by checks payable to Yield Nation.  In all cases, the customers pay Yield Nation in advance of delivery, often months before Yield Nation delivers any product.

51.    Customers typically pay Yield Nation thousands of dollars for each order.

**G.    After Payment, Yield Nation Delivers Products that Are Not Nutriplant®.**

52.    Despite representing to the buyers that they were purchasing Nutriplant®, the products Yield Nation delivers are not Nutriplant®.  Instead, they are different agricultural products with packaging that resembles in many ways the packaging of the Nutriplant® products but with Yield Nation labels.

53.    Yield Nation continues to deceive customers about the products after the purchase and delivery. When Yield Nation delivers the products, it represents, through affirmative statements and omissions of fact, that the Yield Nation products <u>are</u> Nutriplant®, despite differences in packaging and labeling.  For example, when asked why the packaging of the Yield Nation product was different from the Nutriplant® packaging, Yield Nation conceals the fact that Yield Nation is not Nutriplant® by: representing that Nutriplant® had changed its packaging but that the product was the same; explaining that the label was different because Yield Nation had outsourced manufacturing of Nutriplant® to a different company; explaining that "we put it in a different bucket this year"; and explaining that "the products [a customer] received were the same product [he] had previously purchased, but that Yield Nation had purchased it in bulk and repackaged it to save costs for farmers."

54.    As a result, even where buyers observe differences in the packaging or labeling of

11

the products they receive, Yield Nation claims that the products are Nutriplant®, with only cosmetic or other non-material differences, and perpetuates the false pretense that Yield Nation sells Nutriplant®.

**H.      The Yield Nation Products Do Not Perform Like Nutriplant® Products**

55.      There are meaningful and substantial differences between the Nutriplant® products that Yield Nation purports to sell and the Yield Nation products that Yield Nation delivers to customers.

56.      For example, the Yield Nation seed treatment, which customers purchased believing it was Nutriplant® SD, arrived in solid chunks, rather than in the fine powder form of Nutriplant® SD.  This condition limits the customer's ability to use the seed treatment because the planter equipment that is used to spread the seed is designed to use the fine powder, not chunks.  The same customers did not experience these issues with Nutriplant® SD.

57.      Customers also experienced numerous problems with the foliar spray they received from Yield Nation, which they believed to be Nutriplant® AG.  Among other issues, the foliar spray separates, with heavier particles on the bottom of the container and lighter particles near the top, and does not mix.  This is a critical failure of the product.  It clogs the sprayer equipment that is needed to apply the spray and other products, which in turn costs time and money to repair and also can result in lost growing opportunities.  The same buyers did not experience these issues with Nutriplant® AG.

58.      Yield Nation continues to conceal its bait-and-switch from the customers when customers raise concerns about the Yield Nation products.  For example, Yield Nation claimed that the chunky seed treatment was caused by isolated issues with the Nutriplant® manufacturer.

59.      In other cases, the condition of the foliar spray or the seed treatment makes it

completely or partially unusable.

**I.    Yield Nation Harms Nutriplant®'s Reputation and Goodwill.**

60.    Through Yield Nation's deception and concealment, customers believe that Nutriplant® products are defective and poor-performing based on their experience with what in fact are the Yield Nation products.

61.    The buyers thus come to view Nutriplant® as low-quality products.  Even buyers who previously had positive experiences with Nutriplant®, and had intended to keep using Nutriplant® on their crops, have come to view Nutriplant® as inferior due to the defects and failures they experienced with the products they purchased from Yield Nation.

62.    As a result of Yield Nation's misrepresentations that the products it is providing buyers are Nutriplant®, and the subsequent failures of those products to perform, false reports of defective Nutriplant ®products and negative experiences with Nutriplant® products are circulating in agricultural communities, causing further widespread harm to the Nutriplant® brand and Plaintiffs.  In some cases, farmers who previously purchased large quantities of Nutriplant® are no longer willing to do so.

63.    In these ways and others, Yield Nation has damaged, and continues to damage, Nutriplant®'s reputation and goodwill.

**J.    Yield Nation Diverts Sales from Plaintiffs.**

64.    By passing off its agricultural products as Nutriplant® products, Yield Nation has diverted Nutriplant® sales from Plaintiffs.

65.    Numerous buyers purchase agricultural products from Yield Nation based on their understanding, and representations by Yield Nation, that the buyers are purchasing Nutriplant®. Many of these buyers had purchased Nutriplant® in prior years and intended to continue to

purchase and use Nutriplant® because they have had positive experiences with the products and view the products as high-quality.

66.     But for the fact that Yield Nation represented that the products it was selling were Nutriplant®, buyers would not have purchased products from Yield Nation and instead would have purchased Nutriplant® from authorized Nutriplant® sellers (i.e. IBOs).

67.     In this way and others, Yield Nation has diverted, and continues to divert, Nutriplant® sales from Plaintiffs and its authorized sellers.

**K.     Yield Nation's Conduct Is Willful and Deliberate**

68.     Yield Nation willfully and deliberately passes off its products as Nutriplant®.

69.     Yield Nation affirmatively misrepresents, deceives, and misleads consumers into believing the products it is selling are Nutriplant®.  Toward this end, Yield Nation has intentionally created false sales materials that it uses as tools to further advance its false and misleading statements and to facilitate sales.

70.     Yield Nation targets consumers who Yield Nation knows have purchased Nutriplant® in the past and are inclined to continue to purchase Nutriplant® in the future.  These include many of the same consumers that purchased Nutriplant® from Yield Nation's sales representative, Buckwalter.

71.     Yield Nation also targets consumers who have not previously purchased Nutriplant® by promoting Nutriplant®'s reputation and goodwill.

72.     And when the buyers report problems with the products they received from Yield Nation, Yield Nation doubles down on its false representations that the products are Nutriplant® and blames the problems on Nutriplant®.

14

## Count I – Violation of 15 U.S.C. § 1125(a)(1)(A)

73.     Plaintiffs incorporate and reallege each of the preceding paragraphs.

74.     Yield Nation has engaged in unfair competition because it attempts to trade on the goodwill and business reputation of Nutriplant® for its own advantage.

75.     Yield Nation's use in commerce of words, symbols, names, images and/or false or misleading descriptions of fact are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship or approval of Yield Nation's products and activities and constitutes a false designation, description or representation in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). These claims include:

> (a) Falsely representing, including through affirmative statements, omissions, and concealment, to consumers that it sells Nutriplant®;

> (b) Falsely stating in its brochure, Sales Receipts, and other materials that it sells Nutriplant®;

> (c) Falsely advertising in its brochure and sales materials that it sells Nutriplant®;

> (d) Falsely representing to consumers that they are buying Nutriplant® and will receive Nutriplant®;

> (e) Using without authorization images of Nutriplant® products in its representations to customers and sales materials;

> (f) Using without authorization the Nutriplant® mark and Nutriplant® name in its representations to customers and sales materials;

> (g) Falsely representing that Yield Nation owns Nutriplant® or is otherwise associated with Nutriplant®.

76.     Yield Nation, through its use in commerce of words, symbols, names, images

15

and/or false or misleading descriptions of fact, as detailed above, constitutes false representations and false designations of origin that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Yield Nation with Nutriplant®, or as to the origin, sponsorship, or approval of Yield Nation, or commercial activities by Plaintiffs and Nutriplant®.  These actions constitute unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

77.     Yield Nation, through its use in commerce of words, symbols, names, images and/or false or misleading false or misleading descriptions of fact, as detailed above, has attempted to and has in fact passed off its Yield Nation products as Nutriplant® products, which is likely to cause confusion as to the source of origin of the goods, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

78.     Yield Nation, through its unauthorized use in commerce of the Nutriplant® mark or a counterfeit version of the Nutriplant® mark, has attempted to and has in fact passed off its Yield Nation products as Nutriplant® products.  Yield Nation's actions, statements, and omissions constitute false representations and false designations of origin that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Yield Nation with Nutriplant®, or as to the origin, sponsorship, or approval of Yield Nation, or commercial activities by Plaintiffs and Nutriplant®, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

79.     As a result of the foregoing, Plaintiffs have been and will continue to be irreparably harmed and damaged. Plaintiffs' remedies at law are inadequate to fully compensate them for this harm and damage.

80.     This is an exceptional case, and Plaintiffs are entitled to an award of attorney fees

under 15 U.S.C. § 1117(a).

81.     As a direct and proximate result of Yield Nation's conduct, Plaintiffs have

suffered actual damages.

### Count II – Violation of 15 U.S.C. § 1114

82.     Plaintiffs incorporate and reallege each of the preceding paragraphs.

83.     Yield Nation's use of the Nutriplant® marks in connection with the sale, offering

for sale, and advertising of Yield Nation's products constitutes trademark infringement under 15

U.S.C. § 1114(1).

84.     Yield Nation's use of the Nutriplant® marks is without permission or authority of

Plaintiffs.

85.     Yield Nation's use of the Nutriplant® marks is likely to cause confusion, to cause

mistake, and to deceive.

86.     Yield Nation had, at minimum, constructive notice at all relevant times of

Plaintiff's ownership and other rights in the registration, pursuant to 15 U.S.C. § 1072.

87.     By reason of the foregoing, Plaintiffs have been and will continue to be

irreparably harmed and damaged.  Plaintiffs' remedies at law are inadequate to compensate for

this harm and damages and injunctive relief are proper under 15 U.S.C. § 1116.

88.     Unless the Court restrains Yield Nation's unlawful acts, such acts will continue,

causing irreparable injury to Plaintiffs and to the public, for which there is no adequate remedy at

law.

89.     As a direct and proximate result of Yield Nation's conduct, Alticor has suffered

actual damages.

90.     This is an exceptional case, and Alticor is entitled to an award of attorney fees

under 15 U.S.C. § 1117.

### Count III –Unfair Competition – Missouri Common Law

91.     Plaintiffs incorporate and reallege each of the preceding paragraphs.

92.     Yield Nation has engaged in unfair competition because it attempts to trade on the goodwill and business reputation of Nutriplant® for its own advantage.

93.     Yield Nation's use in commerce of words, symbols, names, images and/or false or misleading descriptions of fact are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship or approval of Yield Nation's products and activities and constitutes a false designation, description or representation in violation of Missouri's common law prohibition of unfair competition.  These claims include:

(a) Falsely representing, including through affirmative statements, omissions, and concealment, to consumers that it sells Nutriplant®;

(b) Falsely stating in its brochure, Sales Receipts, and other materials that it sells Nutriplant®;

(c) Falsely advertising in its brochure and sales materials that it sells Nutriplant®;

(d) Falsely representing to consumers that they are buying Nutriplant® and will receive Nutriplant®;

(e) Using without authorization images of Nutriplant® products in its representations to customers and sales materials;

(f)  Using without authorization the Nutriplant® mark and Nutriplant® name in its representations to customers and sales materials;

(g) Falsely representing that Yield Nation owns Nutriplant® or is otherwise associated with Nutriplant®.

18

94.     Yield Nation, through its use in commerce of words, symbols, names, images and/or false or misleading descriptions of fact, as detailed above, constitutes false representations and false designations of origin that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Yield Nation with Nutriplant®, or as to the origin, sponsorship, or approval of Yield Nation, or commercial activities by Plaintiffs and Nutriplant®.  These actions constitute unfair competition in violation of Missouri common law.

95.     Yield Nation, through its use in commerce of words, symbols, names, images and/or false or misleading false or misleading descriptions of fact, as detailed above, has attempted to and has in fact passed off its Yield Nation products as Nutriplant® products, which is likely to cause confusion as to the source of origin of the goods, in violation of Missouri common law.

96.     Yield Nation, through its unauthorized use in commerce of the Nutriplant® mark or a counterfeit version of the Nutriplant® mark, has attempted to and has in fact passed off its Yield Nation products as Nutriplant® products and constitutes false representations and false designations of origin that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Yield Nation with Nutriplant®, or as to the origin, sponsorship, or approval of Yield Nation, or commercial activities by Plaintiffs and Nutriplant®, in violation of Missouri common law.

97.     As a result of the foregoing, Plaintiffs have been and will continue to be irreparably harmed and damaged.  Plaintiffs' remedies at law are inadequate to fully compensate them for this harm and damage.

98.     Unless the Court restrains Yield nation's unlawful acts, such acts will continue, causing irreparable injury to Plaintiffs and to the public, for which there is no adequate remedy at

law.

99.     As a direct and proximate result of Yield Nation's conduct, Plaintiffs have

suffered actual damages.

**Prayer for Relief**

WHEREFORE, Plaintiffs Alticor and Amway hereby requests entry of a judgment

against Yield Nation as follows:

A.      That Yield Nation has engaged in unfair competition and trademark infringement

in violation of the Lanham Act and unfair competition in violation of Missouri common

law;

B.      For a preliminary and permanent injunction against Yield Nation, and its officers,

agents, servants, employees, attorneys and all entities and individuals in active concert or

participation with them who received actual notice of such injunction by personal service

or otherwise:

i.      Precluding Yield Nation and its officers, agents, servants, employees,

attorneys and all entities and individuals in active concert or participation

with them, from claiming, stating, or representing that Yield Nation sells

Nutriplant®, that Nutriplant® is owned by or in any way associated with

Yield Nation, that Yield Nation's products originate with Nutriplant®; or

otherwise representing any connection between Yield Nation and its

products, on the one hand, and Nutriplant® or Plaintiffs, on the other

hand;

ii.     Precluding Yield Nation and its officers, agents, servants, employees,

attorneys and all entities and individuals in active concert or participation

        with them, from using the Nutriplant® marks in its sales materials,

        including brochures and Sales Receipts; and

    iii.    Precluding Yield Nation and its officers, agents, servants, employees,

        attorneys and all entities and individuals in active concert or participation

        with them, from further infringement of Plaintiff's federal trademark

        rights.

C.      That Yield Nation be required to pay to Plaintiffs all damages sustained by Plaintiffs due to Yield Nation's conduct complained of herein, and Defendant's profits as a result of its conduct;

D.      That Yield Nation account and pay over to Plaintiffs all gains, profits, and advantages derived from said trademark infringement, in accordance with 15 U.S.C. § 1117.

E.      That Yield Nation pay damages totaling three times the compensatory damages for its willful and intentional misconduct, in accordance with 15 U.S.C. § 1117.

F.      Awarding punitive damages on Plaintiffs' claim for unfair competitive conduct under Missouri common law.

G.      That this case is exceptional under 15 U.S.C. § 1117(a), entitling Plaintiffs to an award of its reasonable attorney fees;

H.      That Yield Nation file with the Court within thirty (30) days after entry of final judgment in this cause a written statement under oath setting forth the manner in which Yield Nation has complied with the final judgment;

I.      Awarding all reasonable attorney fees allowed by statute, costs, pre-judgment interest, post-judgment interest, and enhanced damages as may be just and proper;

J.      That Yield Nation destroy all materials in its possession or control that contain the

Nutriplant® mark; and

K.      For such other and further relief as the Court deems just and proper under the

circumstances.

## Jury Demand

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by

jury on all issues so triable.


Dated:  March 11, 2021                         Respectfully submitted,

                                               **DOWD BENNETT LLP**

                                               By: /s/ Matthew K. Crane
                                                   Matthew K. Crane #65854
                                                   7733 Forsyth Blvd., Suite 1900
                                                   St. Louis, Missouri 63105
                                                   (314) 889-7300 (telephone)
                                                   (314) 863-2111 (facsimile)
                                                   mcrane@dowdbennett.com

                                                   *Attorney for Plaintiffs*

22